110 N.J. Super. 14 (1970)
264 A.2d 247
RICHARD C. SAS, PLAINTIFF-RESPONDENT
v.
JUNE STRELECKI, DIRECTOR OF MOTOR VEHICLES, DEFENDANT-APPELLANT. JOHN DRAHOS, PLAINTIFF-RESPONDENT,
v.
JUNE STRELECKI, DIRECTOR OF MOTOR VEHICLES, DEFENDANT-APPELLANT, AND RICHARD C. SAS AND WALTER H. WARD, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 1970.
Decided April 20, 1970.
*16 Before Judges CONFORD, COLLISTER and KOLOVSKY.
Mr. Philip Blacher argued the cause for appellant.
Mr. Stephen E. Barcan argued the cause for respondent Richard C. Sas (Messrs. Wilentz, Goldman & Spitzer, attorneys; Mr. Warren W. Wilentz, of counsel).
The opinion of the court was delivered by CONFORD, P.J.A.D.
This appeal arises out of negligence litigation following a collision between a car being driven south on Crows Mill Road in Fords and a car parked on the easterly side of the road. Plaintiffs Sas, the driver, and Drahos, his passenger, sue the defendant Strelecki, as Director of the Division of Motor Vehicles, and Drahos' complaint joins Sas as a party defendant. Defendant Director is sued under the Unsatisfied Claim and Judgment Fund Act provision authorizing such suit in "hit and run" cases. N.J.S.A. 39:6-78. Plaintiffs' contention at trial was that while they were traveling late at night a light-colored car came at theirs from the opposite direction and on the wrong side of the road, and that Sas swerved to the left to avoid it and in so doing collided with the parked car. The owner of that car is not a party.
*17 The main issue on appeal is the admissibility of an investigating police officer's testimony as to statements made to him at the scene of the accident by Sas, Drahos and a local resident, Mrs. Alliegro, and, in relation to the latter, of the admissibility of the officer's official report of the accident.
Called by Drahos as his first witness, the officer testified he arrived at the scene between five and ten minutes after receiving a radio signal to go to the scene. Over objection of the defendant the officer was allowed to state what Sas and Mrs. Alliegro (and, impliedly, Drahos) had told him as to how the accident happened. His account, practically identical with his official report, from which he apparently read, was as follows:
Q. Officer, what did they tell you as to how this accident happened?
A. Driver of vehicle number two [Sas] stated he was travelling south on Crows Mill Road when an unidentified car travelling north on Crows Mill Road swerved into his path forcing him to pull his steering wheel and causing him to strike [the parked car] which was legally parked at the curb. He stated further that had he not swerved the unidentified vehicle would have hit him head on.

* * * * * * * *
Q. Officer, is there anything else contained in your report with regard to his statements?
A. Yes, sir, there is.
Q. Will you finish your report?
A. He told me that the vehicle, that the unidentified vehicle was a 1966 White Chevrolet, and after he hit the parked car, the Chevy picked up speed and left the scene.

* * * * * * * *
Q. What did the witness tell you with regard to the happening of the accident or with regard to her observations?

* * * * * * * *
A. The information given to me by [Sas] and his passenger was backed up by a witness [Mrs. Alliegro] who told me the same thing.
The trial judge admitted this testimony over objection because Sas, Drahos and Mrs. Alliegro were going to testify and because "I think the jury should have the benefit of the comparison."
*18 Sas, called as a witness by Drahos, and Drahos himself gave testimony as to the accident substantially as recounted in the statements they gave the police officer and set forth above. Mrs. Alliegro testified that she heard the crash outside her door, looked out and saw the "light" car on the wrong side of road. "He hesitated, like he was going to stop and then he took off." On cross-examination Mrs. Alliegro admitted having signed a statement for an investigator to the effect that "[b]oth cars were in the same direction toward New Brunswick Ave" (south). In rebuttal, over objection, Drahos was permitted to offer in evidence the entitrety of the police report as containing a "prior consistent statement" by Mrs. Alliegro, purportedly to rehabilitate her testimony on direct examination.
The jury by a 10-2 vote found for Sas and Drahos against defendant and for Sas in Drahos' action against Sas. Defendant's motion for a new trial was denied. Only defendant appeals.
Plaintiffs first offer defense of the admission of the statements given the police officer as spontaneous statements by the declarants and therefore exceptions to the hearsay evidence rule. It is clear that this was not the basis for admission of the statements by the trial court. Under Evidence Rule 63(4) the declarant must be shown to have been "under the stress of a nervous excitement caused by such perception [of the event which the statement describes or explains], in reasonable proximity to the event, and without opportunity to deliberate or fabricate." The police officer said he arrived at the scene five or ten minutes after receiving the call on the radio. Considering the probable lapse in time between the accident and the call to police headquarters and the detailed explanation of the accident to the officer by the occupants of the Sas car, it is highly unlikely that the requirement of unreflective spontaneity is satisfied. See Rogalsky v. Plymouth Homes, Inc., 100 N.J. Super. 501, 504 (App. Div. 1968), certif. den. 52 N.J. 167 (1968); Fagan v. *19 Newark, 78 N.J. Super. 294, 303-304 (App. Div. 1963). We will not as an appellate court find these to be spontaneous statements particularly when the trial court has not so ruled.
Justification is next argued for the admissibility of the statements under the exception to the hearsay evidence rule constituted by Evidence Rule 63(13)  "Business entries." Preliminarily, the offer of the statements and the ruling thereon were not made on the theory of a business entry but simply as declarations to the officer at the scene of the accident. Only during the course of the development of this evidence did it appear that the officer was reading his official report. As statements, the declarations were inadmissible hearsay. As to Sas, the statement was a self-serving one, with the prejudicial vice of buttressing his consistent in-court testimony to follow. Although the testimony was adduced by Drahos, a nominal adversary of Sas, the trial strategy of both these plaintiffs was to pin sole blame for the accident on the "light" car and thereby hold the defendant Director responsible. Sas' statement was therefore not competent under the "admissions" exception, Evidence Rule 63(7), and Drahos has not so argued either at trial or on appeal. (He filed a letter on appeal subscribing to Sas' brief). Nor does the statement to the officer by Drahos (implied from the officer's testimony) qualify under any exception to the hearsay evidence rule.
As to the officer's testimonial version of what Mrs. Alliegro told him, it is obvious from the foregoing quotation from the testimony that he merely summarized her communication to him in conclusory form. This was doubly objectionable. Cf. Brown v. Mortimer, 100 N.J. Super. 395, 405-406 (App. Div. 1968).
Assuming, arguendo, that since the officer had practically read his report into evidence, his testimony should be evaluated for admissibility as though it were the report which had itself been directly received in evidence, and considering plaintiff's argument that it was admissible under *20 the business entry exception to the hearsay evidence rule, we find the contention to lack merit.
The crucial portion of Evidence Rule 63(13) (business entries) here involved is "if the sources of information from which it [the writing] was made and the method and circumstances of its preparation were such as to justify its admission." The language is not essentially different from the comparable part of former Uniform Business Records as Evidence Act, N.J.S.A. 2A:82-35, which Evidence Rule 63(13) replaced as of September 11, 1967. The purpose and proper interpretation of the new provision is substantially the same as the old. Brown v. Mortimer, supra, 100 N.J. Super., at 403. It was held that the Uniform Act reposed "considerable discretion" in the trial judge in passing upon whether the sources of information, method and time of preparation of a business entry justified its admission into evidence. Mahoney v. Minsky, 39 N.J. 208, 218 (1963). However, the Supreme Court has been firm in following the general requirement of the business entry exception to the hearsay evidence rule that where the business entry consists of information supplied the entrant by another, the informant must be shown to have been under a "business duty"[1] to supply honest information to the entrant  that being the heart of the rationale of the exception. State v. Taylor, 46 N.J. 316, 330-331 (1966); cert. den. sub nom. Taylor v. New Jersey, 385 U.S. 885, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966). Because of the absence of any such business duty to tell the truth on the part of the informant, the statement included in the business record (a hospital record) involved in Taylor was held to have been admitted erroneously and *21 prejudicially. Apparently to the same effect is State v. Gardner, 51 N.J. 444, 461-462 (1968).
Among other authorities cited in Taylor in support of the position there taken was the leading New York decision of Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (Ct. App. 1930), decided under the Model of Commonwealth Fund Act[2] version of the business entry rule. That case sustained the exclusion of a filed police report concerning an accident between a motorcycle and a truck founded upon information received by the officer from bystanders at the scene. The ground of exclusion was the absence of any duty on the part of the persons supplying the information to the officer analogous to the duty of persons supplying information to the makers of business entries  a duty underlying the rationale of this exception to the hearsay evidence rule (170 N.E., at 518-519).
In Fagan v. Newark, supra, also cited by the Supreme Court in State v. Taylor, supra, as authoritative in connection with the point under discussion, we said:
Where, however, the informant to the entrant of the record is under no duty to anyone to make a truthful account of the facts thus recorded, the record will not be admissible as proof of such facts. Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (Ct. App. 1930) (report of policeman as to accident based on information from bystander witnesses; decided under Model Act; leading case). Aside from Wigmore[6], no competent authority in the field and few courts have dissented from this qualification obviously basic to the rationale of the business entry exception. See McCormick, op cit., § 286, pp. 602, 603; McCormick, "Hearsay," 10 Rutgers L. Rev. 620, 629, 630 (1956); Maguire, Evidence, Common Sense and Common Law, op. cit., at p. 159; "Revised Business Entry Statutes: Theory and Practice," op. cit. (48 Colum. L. Rev., at p. 927). Illustrative cases are United States v. Grayson, 166 F.2d 863 (2 Cir.1948; per Learned *22 Hand, J.); Central Railroad Co. of New Jersey v. Jules S. Sottnek Co., 258 F.2d 85 (2 Cir.1958); United States v. United Shoe Machinery Corp., 89 F. Supp. 349 (D. Ct. Mass. 1950). But see Moran v. Pittsburgh-DesMoines Steel Co., 183 F.2d 467 (3 Cir.1950).
See the able and comprehensive discussion of this question in Yates v. Bair Transport, Inc., 249 F. Supp. 681 (S.D.N.Y. 1965), in accord with the view here taken.
We thus conclude that the statements to the police officer made by Sas, Drahos and Mrs. Alliegro were not rendered admissible on the theory of incorporation in a business record because they were not under any "business duty" to render a truthful account of the accident to the officer. See also Rogalsky v. Plymouth Homes, supra, 100 N.J. Super., at 506. Plaintiffs' reliance upon the recent decision in Schneiderman v. Strelecki, 107 N.J. Super. 113 (App. Div. 1969), certif. den. 55 N.J. 163 (1969), does not affect our conclusion. Since the court there reversed on other grounds, its remarks as to the admissibility of the police report were not essential, and, indeed, the court indicated that if at the retrial the statement of plaintiff to the officer recorded in his report were found to be a self-serving narrative of past events rather than a spontaneous declaration, it should be excluded. The point of absence of "business duty" of the declarant to relate an honest account of the occurrence to the entrant was not considered in the opinion of the court in Schneiderman, and the decision in State v. Taylor, supra, is of course controlling on us in that regard.
We further hold that Drahos did not have the right to offer the police officer's report as containing a "prior consistent statement" of Mrs. Alliegro to rehabilitate her testimony in chief after the attack upon her credibility on cross-examination through her prior inconsistent statement. See McCormick, Evidence, § 49, at 108 (1954). The rule is that such a prior consistent statement is admissible only where the nature of the attack upon the credibility of the witness tends to show that his testimony is a fabrication of recent date. Evidence Rule 20. And see State v. Neiman, *23 123 N.J.L. 341, 344 (Sup. Ct. 1939), aff'd o.b. 124 N.J.L. 562 (E. & A. 1940). It is doubtful that the necessary foundation was laid here. The problem was certainly not recognized at trial. In any event, no particular statement of Mrs. Alliegro is set forth in the officer's report  merely the officer's conclusion that she told him "the same thing" as Sas and Drahos. Actually, her testimony in chief did not amount to the "same thing," for she admitted she never saw the accident itself.
Finally, plaintiffs argue that the admission, in effect, of the police report was harmless because the authors of the statements to the officer contained therein were present in court, did testify and were subject to cross-examination. They cite in support Juaire v. Nardin, 395 F.2d 373 (2 Cir.1968), cert. den. sub nom. Juaire v. Marshak, 393 U.S. 938, 89 S.Ct. 302, 21 L.Ed.2d 274 (1968). That decision, while expressing the view (at 379) that "Probably, * * * the best rule is that if the original source (the declarant) is not under a duty to tell the truth, or if the statement of the declarant does not itself come under some established hearsay exception * * *, then the police report containing that information is inadmissible," concluded that on the whole case there involved the admission of such a report was harmless error. In part the court relied on the fact that the informants were in court and had testified and that the jury was "fully aware of the limited observation on which" two of the informants had based their statements to the officer (at 379).
The determination of the harmlessness or prejudiciality of incompetent evidence is always peculiarly a matter of appraisal of the circumstances of the particular case. Here defendant was in a particularly disadvantageous and vulnerable position because of the nature of the alleged accident. She had no recourse to the best source of defensive testimony  the driver of the "light" car. Any undue fortification of plaintiffs' case would thus tend to exert more than ordinary adverse effect. Here that undue effect *24 obtained because the circumstance of statements by plaintiffs to the police officer at the scene of the accident as to how it happened consistent with their courtroom testimony thereon, would tend to buttress the latter in the minds of the jury. We conclude there was prejudicial error.
We do not agree with defendant's additional appellate argument that the trial court improperly charged the "emergency doctrine."
Reversed; costs to abide the event of a new trial.
NOTES
[1] Since public institutional records are "business records" within the hearsay exception, Fagan v. Newark, supra, 78 N.J. Super., at 308, the "business duty" to tell the truth required of the informant need not pertain to any "business" as such but must be a duty analogous to the duty of the business employee to furnish honest information to the entrant.
[2] Discussed in Fagan v. Newark, supra, 78 N.J. Super., at 310-311.
[6] 5 Wigmore, op cit., § 1530a, pp. 391, 392. Notwithstanding Wigmore, it would be astounding to most lawyers to be told that under the Uniform Act voluntary statements made to an investigating policeman after an accident by bystanders not produced in court become admissible because the policeman includes such statements in his report [78 N.J. Super., at 319]