703 A.2d 966

BEVERLY PALMISANO AND ARMAND PALMISANO, HER HUS-BAND, PLAINTIFFS-APPELLANTS, v. EDWIN J. PEAR, M.D., DEFENDANT, AND LEONARD NICOSIA, M.D., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted November 3, 1997—Decided December 19, 1997.

396

Before Judges HAVEY, LANDAU and NEWMAN.

*Piro, Zinna, Cifelli & Paris*, attorneys for appellants (*David M. Paris*, on the brief).

*Francis & Berry*, attorneys for respondent (*Evelyn Cadorin Farkas*, on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

In this medical malpractice case, plaintiffs appeal from a judgment entered on a no-cause verdict in favor of defendant, Leonard Nicosia, M.D.

In her complaint, plaintiff Beverly Palmisano (plaintiff) claims that Dr. Nicosia, a gynecologist, deviated from accepted medical standards of care in failing to refer her to a specialist for a biopsy after palpating a lump on her breast in March 1990.[1] The jury found no deviation and returned a verdict in defendant's favor.

The thrust of plaintiff's contention on appeal is that the trial judge erred in excluding from evidence a medical history given by her on December 8, 1990 to a breast specialist who ultimately diagnosed cancer in both of plaintiff's breasts. In that history, plaintiff stated that Dr. Nicosia had "felt" a lump on her breast nine months earlier. Plaintiff argues that the history was admissible under *N.J.R.E.* 803(c)(4) as necessary for the proper diagnosis and medical treatment of her disease. Alternatively, she claims that the statement was admissible under *N.J.R.E.* 607 and *N.J.R.E.* 803(a)(2) to support her credibility because defendant had implied recent fabrication. We reject the contentions and affirm.

---

[1] Plaintiff Armand Palmisano, Beverly's husband, asserts a per quod claim.

Plaintiff testified that she was examined in February 1989 by Dr. Nicosia's partner, defendant Dr. Edwin Pear.[2] Plaintiff complained of vaginal bleeding. A routine breast examination detected no abnormalities. A subsequent baseline mammogram conducted on May 5, 1989, revealed calcification on plaintiff's right breast which appeared to be benign.

According to plaintiff, she saw Dr. Pear again in January 1990 after feeling a lump on her left breast. She testified that Dr. Pear performed a breast examination, but felt no lump. However, he sent her for another mammogram. A February 1, 1990 mammogram indicated a normal left breast with benign calcification in the right breast, with no change in density from the previous film. A six-month follow-up examination was recommended for the right breast.

Plaintiff was examined by Dr. Nicosia on March 26, 1990. She claimed she told Dr. Nicosia that she had previously reported the lump on her left breast to Dr. Pear. According to plaintiff, Dr. Nicosia felt the lump and said, "[o]h, that's nothing to worry about. You just have wacky breasts. Don't worry about it." Plaintiff testified that after this examination she talked with Dr. Nicosia on many occasions by phone about her vaginal bleeding and the lump on her breast.

At plaintiff's request, her May 5, 1989 and February 1, 1990 mammograms were sent by Dr. Nicosia to Dr. Mitchell Bernstein, a breast specialist. Dr. Bernstein examined the films and agreed with the radiologist's findings and the recommendation that a follow-up mammogram be performed.

In July 1990, plaintiff was taken to a hospital emergency room for excessive vaginal bleeding. She was examined by Dr. Nicosia, who recommended a complete hysterectomy. She testified that Dr. Nicosia again checked her left breast for a lump and told her it was "nothing." The hospital record notes that a breast exami-

---

[2] The complaint against Dr. Pear was voluntarily dismissed.

nation was performed, which was normal. There is no indication in the record, however, that plaintiff had complained of a lump. During her hospitalization, Dr. Nicosia performed the hysterectomy.

Plaintiff testified that, on August 31, 1990, during a post-operative visit, Dr. Nicosia examined plaintiff and again told her that she had "wacky breasts." Troubled by the doctor's observation, plaintiff underwent a mammogram with ultrasound on December 5, 1990. This mammogram revealed an increase in density of tissue and lesions on the left breast. Plaintiff was advised by the radiologist to undergo a biopsy of both breasts.

On December 8, 1990, plaintiff presented herself to the office of Dr. Bernstein. The doctor's assistant, Lynn Camwell, took plaintiff's medical history. Ms. Camwell recorded that plaintiff "[s]aw Dr. Nicosia and he felt lump left 4/90." The trial judge excluded from evidence this part of the history, concluding that it did not fall within the medical treatment exception to the hearsay rule, *N.J.R.E.* 803(c)(4), because it was self-serving and unnecessary for the purpose of medical diagnosis and treatment. The judge also rejected plaintiffs' alternative argument that the report was admissible to rebut a charge of recent fabrication. He further observed that even if the history had some marginal relevance, it was so prejudicial as to be excludable under *N.J.R.E.* 403.

As a result of a biopsy conducted by Dr. Bernstein, it was revealed that plaintiff was suffering from breast cancer. Dr. Bernstein recommended immediate surgical intervention. On January 10, 1991, complete mastectomies on both breasts were performed.

Dr. Nicosia testified that plaintiff never complained of a breast lump to him. On the day of his March 26, 1990 examination of plaintiff, his nurse recorded plaintiff's complaint as "GYN visit, vaginal bleeding since March 7th." He testified that when plaintiff expressed a concern with the mammogram results, he forwarded the films of both the May 1989 and February 1990 mammograms to Dr. Bernstein.

Dr. Nicosia next examined plaintiff in the hospital in July 1990. At that time he performed a breast examination, which was normal. According to Dr. Nicosia, plaintiff did not complain of a lump on her breast during the hospital examination.

Dr. Nicosia testified that when plaintiff's December 5, 1990 mammogram was performed with positive results, he instructed her to contact Dr. Bernstein immediately.

I

*N.J.R.E.* 803(c)(4) provides an exception to the hearsay rule when statements of a patient are:

> made in good faith for purposes of medical diagnosis or treatment which describe medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof to the extent that the statements are reasonably pertinent to diagnosis or treatment.

As long as the statements are made for the purpose of diagnosis or treatment, and are reasonably pertinent thereto, the statements are admissible hearsay evidence. Biunno, *Current N.J. Rules of Evidence,* comment on *N.J.R.E.* 803(c)(4) (1997). The rationale for the exception is that "such statements possess inherent reliability because 'the patient believes that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician.'" *R.S. v. Knighton,* 125 *N.J.* 79, 87, 592 *A.*2d 1157 (1991) (quoting *McCormick on Evidence* § 292 at 839 (3d ed.1984)). The assumption is that the declarant is "'more interested in obtaining a diagnosis and treatment culminating in a medical recovery than ... in obtaining a favorable medical opinion culminating in a legal recovery.'" *In re C.A.,* 146 *N.J.* 71, 99, 679 *A.*2d 1153 (1996) (quoting Biunno, *supra,* comment on *N.J.R.E.* 803(c)(4)).

██ Statements as to the cause of injury, when the cause is irrelevant to diagnosis or treatment, are inadmissible under the exception. *Knighton, supra,* 125 *N.J.* at 88, 592 *A.*2d 1157. Contrary to the inherent reliability found in statements concerning past and present symptoms, statements as to cause "may be

the product of ulterior considerations." *Bober v. Independent Plating Corp.*, 28 *N.J.* 160, 170, 145 *A*.2d 463 (1958). *See Cestero v. Ferrara*, 57 *N.J.* 497, 499, 501, 273 *A*.2d 761 (1971) (a patient's statement to her physician that she had obeyed a traffic signal before being hit was inadmissible because it was irrelevant to her treatment); *Dinter v. Sears, Roebuck & Co.*, 252 *N.J.Super.* 84, 92, 599 *A*.2d 528 (App.Div.1991) (exclusion of plaintiff's history proper because "there was no testimony by any physician . . . that the cause of her fall was relevant to diagnosis or treatment"); *cf. Bober, supra*, 28 *N.J.* at 171–72, 145 *A*.2d 463 (finding admissible a medical history given by plaintiff to his physician about his working environment respecting chrome dust at work site, since it was relevant to diagnosing cause of plaintiff's allergies).

Plaintiff's statement to Dr. Bernstein's assistant that Dr. Nicosia had "felt" her breast lump in March 1990 was properly excluded. First, it was, in essence, double hearsay; Dr. Bernstein's assistant recorded plaintiff's statement about the sensory perception of another. Second, its relevance was limited to proving Dr. Nicosia's culpability; it corroborated plaintiff's testimony that Dr. Nicosia knew about the lump as early as March 26, 1990. This assertion was a factual predicate to plaintiff's expert's opinion that Dr. Nicosia deviated from accepted medical practice in not promptly referring plaintiff to a breast specialist for treatment. As such, the statement was akin to describing the cause of an injury while giving a medical history. Thus, plaintiff's statement "was a self-serving one, with the prejudicial vice of buttressing" her own trial testimony and the opinion rendered by her expert. *Sas v. Strelecki*, 110 *N.J.Super.* 14, 19, 264 *A*.2d 247 (App.Div. 1970).

Finally, the statement was not a medical necessity for the purpose of Dr. Bernstein's diagnosis or treatment of plaintiff's condition. In other words, it was not "reasonably pertinent to diagnosis or treatment." *N.J.R.E.* 803(c)(4). Plaintiff adduced no testimony from Dr. Bernstein or from her expert explaining how this statement would have been significant to the diagnosis and

treatment of plaintiff's breast cancer. What Dr. Bernstein had before him on December 8, 1990, when he examined plaintiff and made his diagnosis, was the most recent mammogram of December 5, 1990, which, unlike the prior films, reflected an increase in density of tissue, lesions on the left breast and a recommendation to perform a biopsy. He performed a biopsy which revealed the cancer. Consequently, without expert testimony to the contrary, it must be concluded that the bases to Dr. Bernstein's diagnosis and recommendation that surgery be performed were the recent mammogram and biopsy, not plaintiff's statement about what Dr. Nicosia may have "felt" nine months earlier. The statement was therefore not admissible under *N.J.R.E.* 803(c)(4).

## II

■ We also reject plaintiffs' argument that her statement was admissible because defendant had attacked her credibility by implying recent fabrication. *See N.J.R.E.* 607 and *N.J.R.E.* 803(a)(2). A prior consistent statement offered to bolster a witness' testimony is inadmissible. *See* Biunno, *supra*, comment 4 on *N.J.R.E.* 607; *State v. Sullivan*, 24 *N.J.* 18, 39, 130 *A.*2d 610, *cert. denied*, 355 *U.S.* 840, 78 *S.Ct.* 52, 2 *L.Ed.*2d 51 (1957). However, a prior statement may be admitted in evidence to support the credibility of a witness for the purpose of rebutting an expressed or implied charge of recent fabrication. *State v. Johnson*, 235 *N.J.Super.* 547, 555, 563 *A.*2d 851 (App.Div.), *certif. denied*, 118 *N.J.* 214, 570 *A.*2d 971 (1989); *see State v. King*, 115 *N.J.Super.* 140, 146–47, 278 *A.*2d 504 (App.Div.), *certif. denied*, 59 *N.J.* 268, 281 *A.*2d 530 (1971) (prior consistent statement admitted when the cross-examiner implied that witness threatened detectives a week before trial that she intended to lie); *State v. Bass*, 221 *N.J.Super.* 466, 486, 535 *A.*2d 1 (App.Div.1987), *certif. denied* 110 *N.J.* 186, 540 *A.*2d 182 (1988) (prior consistent statement admitted when cross-examination of a child, indicating he had remembered certain incidents only when helped by the detective, implied child fabricated his version of the story); *State v. Silva*, 131 *N.J.* 438,

449–50, 621 *A.*2d 17 (1993) ("[a] prosecutor who cross-examines a witness about an unwillingness to discuss the case with the State's investigator will have to accept the introduction of prior consistent statements made to others that rehabilitate the original testimony").

Here, it is true that plaintiff's credibility was brought into question on cross-examination when defense counsel pointed to inconsistencies between her trial testimony and previous deposition testimony and interrogatory answers. For example, defense counsel asked plaintiff whether she was absolutely positive she had mentioned the lump on her breast to Dr. Nicosia when she was examined in the hospital emergency room in July 1990. She stated, "I'm very sure that I did tell him that." Plaintiff was then confronted with her prior deposition testimony where, when asked whether she remembered mentioning the lump to Dr. Nicosia at the hospital, she responded, "[t]o be a hundred percent sure, I couldn't really say. I don't really recall."

■ An attack on a party's credibility through prior inconsistent statements does not necessarily give plaintiff the right to use a prior consistent statement to buttress the party's credibility. *See Sas, supra,* 110 *N.J.Super.* at 22, 264 *A.*2d 247. Admitting such testimony is contrary to the traditional rule that parties may not bolster the credibility of their witnesses, unless the "attack upon the credibility of the witness tends to show that his testimony is a fabrication of recent date." *Ibid. See also* 1 *McCormick on Evidence* § 47 at 177 (Strong ed. 4th ed.1992) (discussing conflicting decisions on whether impeachment by inconsistent statements opens the door to rehabilitation through consistent statements).

■ Absent here is any claim of "fabrication of recent date." The cross-examination of plaintiff did not adduce any express or implied recent falsehood or change in plaintiff's testimony respecting the history of the medical treatment by Dr. Nicosia. Indeed, in her July 8, 1992 complaint, she charges that she placed herself in the care of Doctors Nicosia and Pear as early as February 1990 for the purpose of treatment of "a lump in her left breast." While

her recollection of the details regarding her visits with Dr. Nicosia may have been shaken by cross-examination, plaintiff never wavered from her assertion that Dr. Nicosia knew of the lump at least nine months before she underwent the mastectomies. Moreover, in her opening and closing arguments to the jury, defense counsel never suggested that plaintiff's testimonial version of the events had recently been altered to buttress her claim of professional negligence.

Affirmed.