**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3544-13T4

ESTATE OF JOSEPH GAMMA
and MARIA GAMMA,
individually and as
Administratrix Ad Prosequendum of
ESTATE OF JOSEPH GAMMA,

    Plaintiffs-Appellants/
    Cross-Respondents,

v.

CEDAR HILL HEALTH CARE CENTER,
CG HEALTHCARE, L.L.C., AVERY
EISENREICH, TOBY EISENREICH,
OMNI ASSET MANAGEMENT, L.L.C.,
also known as "OMNI HEALTH CARE
ASSOCIATES" and "OMNI RISK
MANAGEMENT",

    Defendants-Respondents/
    Cross-Appellants.

_____

Argued December 9, 2015 — Decided June 30, 2017

Before Judges Koblitz, Kennedy, and Gilson.

On appeal from the Superior Court of New
Jersey, Law Division, Essex County, Docket No.
L-0199-11.

Steven J. Greenstein argued the cause for
appellants/cross-respondents (Tobin, Kessler,
Greenstein, Caruso, Weiner & Konray, P.C., and
The Gruber Firm, L.L.C., attorneys; Mr.

Greenstein, of counsel and on the brief; Saul
G. Gruber, on the brief).

Neil Ptashnik argued the cause for the
respondents/cross-appellants (Ansa Assuncao,
L.L.P., and Ptashnik & Associates, L.L.C.,
attorneys; John P. Mueller and Mr. Ptashnik,
on the brief).

PER CURIAM

Joseph Gamma ("Joseph") died from injuries he suffered when he fell on the floor of a nursing home. His Estate and wife, as Administrator Ad Prosequendum (collectively "plaintiffs"), filed an action against defendants, alleging that Joseph's death was the result of falling off a bed without bedrails. At the close of trial, the trial judge granted a directed verdict in favor of defendants on the counts under the New Jersey Nursing Home Responsibilities and Residents' Rights Act (the Act), N.J.S.A. 30:13-1 to -17, and the jury returned a verdict of no-cause on the remaining negligence count.

Plaintiffs appeal and claim multiple errors, including that the trial judge erred when he failed to ask prospective jurors open-ended questions, as mandated by Administrative Directive #4-07, "Jury Selection — Model Voir Dire Questions Promulgated by Directive #21-06 — Revised Procedures and Questions" (the Directive). See Administrative Directive #4-07, "Jury Selection — Model Voir Dire Questions Promulgated by Directive #21-06 —

2                                                                      A-3544-13T4

Revised Procedures and Questions" (May 16, 2007), http://www.njcourts.gov/attorneys/assets/directives/dir_04_07.pdf. Defendants cross-appeal contending that the motion court improperly permitted hearsay evidence. For the following reasons, we affirm the trial court's directed verdict and the motion court's decision to admit Joseph's statement, but reverse and remand for a new trial because the trial judge erred in not following the Directive.

## I.

The facts are established in the trial record. In the early morning hours of January 8, 2009, Cedar Hill Nursing Home's (Cedar Hill) staff observed Joseph, a patient at Cedar Hill, asleep in his bed. Approximately twenty minutes thereafter, staff observed Joseph on the floor next to his bed with injuries to his toes. According to staff notes, Joseph stated that he rolled out of his bed while asleep. The staff transferred Joseph to Clara Maass Hospital, where he again told hospital staff that he fell out of his bed. After an examination, the hospital concluded Joseph suffered only toe lacerations. He was returned back to Cedar Hill.

On January 12, 2009, Joseph complained of left side weakness and back spasms. He was readmitted to Clara Maass and again referenced his fall on January 8. Over the following months,

3                                          A-3544-13T4

Joseph experienced additional complications. He was eventually admitted to another hospital, where he was diagnosed with respiratory failure, among other issues. In defiance of hospital staff warnings, Joseph's wife fed him solid food, which led to cardiopulmonary arrest and ultimately, his death on March 12, 2009.

Joseph's wife filed a complaint individually and as the Administrator Ad Prosequendum of the Estate, alleging that the fall on January 8, 2009, was a result of Cedar Hill's failure to outfit the bed with bedrails and caused Joseph's death. The complaint asserted violations of a resident's rights under the Act, violations of defendants' responsibilities under the Act, general negligence, negligence per se, deviation from the standard of care and gross neglect, negligent supervision and negligent hiring, punitive damages, consumer fraud, survivorship, and wrongful death.

Prior to trial, defendants moved for summary judgment. Defendants argued that plaintiffs' entire case rested upon a single hearsay statement. The motion court dismissed many of the claims, including the wrongful death count. However, the motion court denied summary judgment as to the claims of negligence and violations of the Act. The motion court also rejected defendants' hearsay argument.

The matter then proceeded to trial on the claims of violations of the Act and negligence. At the close of trial, the court directed a verdict in favor of defendants on the claims under the Act, and thereafter, the jury found that plaintiffs failed to prove the negligence claim and returned a verdict of no cause.

## II.

On appeal, plaintiffs make the following arguments: 1) reversal is required as the trial court erred in failing to comply with the Directive and failed to ask three open-ended questions; 2) the trial court erred in dismissing plaintiffs' claims under the Act; 3) the trial court erred in not granting a mistrial after the parties discovered during the trial that the certified chart relied upon was for a different patient; 4) the trial court erred in admitting evidence of a stroke; 5) the trial court erred in not admitting statements made by Joseph to the emergency room staff; and 6) the trial court committed plain error in its jury instructions. Defendants cross-appeal and argue that the motion court should have precluded Joseph's statement to the Cedar Hill staff as inadmissible hearsay.

We address only the following arguments: 1) whether the trial court properly directed the verdict on counts brought under the Act; 2) whether the motion court properly denied the defendants' motion for summary judgment as it relates to the admissibility of

Joseph's statement; and 3) whether the trial court committed reversible error by not following the Directive.

After a review of the record and relevant law, we affirm the trial court's directed verdict and the admissibility of Joseph's statement. However, we hold that the trial court improperly disregarded the Directive by failing to ask open-ended questions during selection of the jury. Consequently, we are constrained to vacate the judgment, reverse, and remand for a new trial on the negligence claim.

A. The Trial Court's Directed Verdict

At the close of trial, the court directed the verdict on plaintiffs' claims under the Act. The court reasoned that plaintiffs could not maintain an action based on the evidence presented at trial. Although we find alternative grounds for directing the verdict, we uphold the result.

On appeal, plaintiffs contend that any violation of a state or federal regulation, rule, or statute by a nursing home automatically constitutes a violation of the Act. See N.J.S.A. 30:13-3(h). We disagree.

The Act "was enacted in 1976 to declare 'a bill of rights' for nursing home residents and define the 'responsibilities' of nursing homes." Ptaszynski v. Atl. Health Sys., Inc., 440 N.J. Super. 24, 32 (App. Div. 2015), certif. denied, 227 N.J. 357

6                                                                    A-3544-13T4

(2016). The patient's "rights" are enumerated in <u>N.J.S.A.</u> 30:13-5(a) to (n). The nursing home's "responsibilities" are enumerated in <u>N.J.S.A.</u> 30:13-3(a) to (j). One such responsibility of a nursing home is to "ensur[e] compliance with all applicable State and federal statutes and rules and regulations." <u>N.J.S.A.</u> 30:13-3(h). In addition, the Act includes two sections of enforcement for violations of these sections: <u>N.J.S.A.</u> 30:13-8(a) and <u>N.J.S.A.</u> 30:13-4.2.

<u>N.J.S.A.</u> 30:13-8(a) provides, in pertinent part, that:

> Any person or resident whose rights as defined herein are violated shall have a cause of action against any person committing such violation. The Department of Health and Senior Services may maintain an action in the name of the State to enforce the provisions of this act and any rules or regulations promulgated pursuant to this act.

<u>N.J.S.A.</u> 30:13-4.2 provides, in pertinent part, that:

> A person shall have a cause of action against the nursing home for any violation of this act [<u>C.</u>30:13-4.1, 30:13-4.2]. The Department of Health may maintain an action in the name of the State to enforce the provisions of this act and any rules and regulations promulgated pursuant to this act.

We have held that neither section bestows upon an individual the unbridled right to bring a cause of action against the nursing home; rather, the statutes permit enforcement of the Act in limited circumstances. <u>See</u> <u>Ptaszynski</u>, <u>supra</u>, 440 <u>N.J. Super.</u> at 33-36.

Under N.J.S.A. 30:13-8(a), a person can only bring an action for violation of one of the enumerated residents' "rights," set forth in N.J.S.A. 30:13-5. N.J.S.A. 30:13-8(a) does not "authorize a person to bring an action to enforce the nursing home's 'responsibilities' as defined in the law." Ptaszynski, supra, 440 N.J. Super. at 36. Furthermore, under N.J.S.A. 30:13-4.2, an individual can only bring an action as it pertains to security deposits, not for a nursing home's failure to fulfill its responsibilities under N.J.S.A. 30:13-3(h). Ptaszynski, supra, 440 N.J. Super. at 34-36.

It follows that an individual does not have a private cause of action for a nursing home's violation of its responsibilities. An individual may have a cause of action against a nursing home for violations of the individual's rights. However, the Act simply does not provide the avenue for relief requested by plaintiffs. As such, the trial court's decision to direct the verdict was correct.

B. Defendants' Cross-Appeal

We next turn to defendants' cross-appeal. Defendants argue that the motion court erred by admitting Joseph's hearsay statement and denying summary judgment. Defendants contend that the motion court erroneously admitted the statement pursuant to a hearsay

exception, and without the statement, plaintiffs' case falls apart. We do not agree.

During the motion for summary judgment, the motion court admitted the proffered evidence pursuant to the hearsay exception for the purpose of medical diagnosis or treatment. We treat this determination as an evidential issue and apply an abuse of discretion standard. "[A]dmission or exclusion of proffered evidence is within the discretion of the trial judge whose ruling is not disturbed unless there is a clear abuse of discretion." Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 92 (App. Div. 1991). We discern no such abuse of discretion with the admission of Joseph's statements.

N.J.R.E. 803(c)(4) provides an exception to the hearsay rule, regardless of the availability of a declarant:

> Statements made in good faith for purposes of medical diagnosis or treatment which describe medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof to the extent that the statements are reasonably pertinent to diagnosis or treatment.

Thus, "statements which describe present or previous symptoms, pain or sensations [] or their history are admissible to prove the truth of the statements if the statements are relevant to an issue of the declarant's condition." Biunno, Weissbard &

Zegas, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 803(c)(4) (2015). However, "[s]tatements as to the cause of injury, when the cause is irrelevant to diagnosis or treatment, are inadmissible under the exception." Palmisano v. Pear, 306 N.J. Super. 395, 400 (App. Div. 1997).

The rationale underlying previous decisions "is that such statements possess inherent reliability because 'the patient believes that the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician.'" R.S. v. Knighton, 125 N.J. 79, 87 (1991) (quoting McCormick on Evidence § 292 at 839 (3d ed. 1984)). New Jersey cases faced with this issue have "demonstrate[d] an unwavering adherence to that rationale[,]" with varying results. Knighton, supra, 125 N.J. at 87. Some courts have held statements to be inadmissible if a declarant lacked the "treatment motive" or if the cause was irrelevant. See, e.g., Cestero v. Ferrara, 57 N.J. 497, 501 (1971); State v. D.R., 214 N.J. Super. 278, 288-89 n.4 (App. Div. 1986), rev'd on other grounds, 109 N.J. 348 (1988). Others have held that the cause of injury was relevant to diagnosis and treatment. Rose v. Port of N.Y. Auth., 61 N.J. 129, 138 (1972); Bober v. Indep. Plating Corp., 28 N.J. 160, 170-72 (1958); Greenfarb v. Arre, 62 N.J. Super. 420, 437 (App. Div.), certif. denied, 33 N.J. 454 (1960).

We find <u>Greenfarb</u> instructive. There, a wife sued her husband's company for her husband's death. <u>Greenfarb</u>, <u>supra</u>, 62 <u>N.J. Super.</u> at 422. The wife alleged that her husband died due to two work-related injuries: when he tripped over a handtruck and when he lifted a 300-pound piece of dough. <u>Ibid.</u> After her husband felt ill, she called his physician for an examination. <u>Ibid.</u> The husband was hospitalized and diagnosed with a heart attack. <u>Id.</u> at 423-24. Eventually, this led to the husband's death. <u>Id.</u> at 424. At trial, the physician testified that the decedent had lifted the dough. <u>Ibid.</u> The physician also testified about the existence of a causal relationship between the lifting of the dough and the injury that caused the decedent's death. <u>Ibid</u>.

We determined that the physician's statements as to the cause of injury were relevant to treatment and therefore admissible. <u>Id.</u> at 426-27, 437. In employing a flexible view of the hearsay exception, we considered the trustworthiness of the declarant at the time of the statement, the temporal nature of the statement, the condition of the declarant when speaking to the medical professional, and whether the medical professional pursued the inquiry to arrive at a diagnosis or treatment. <u>Id.</u> at 434.

Here, applying these principles, we conclude that the motion court did not abuse its discretion in admitting the statement, and

11

thus, the denial of summary judgment was not erroneous. Similar to Greenfarb, it is reasonable to conclude that Joseph's statement that he fell off the bed would help a diagnosis or treatment. Cf. Greenfarb, supra, 62 N.J. Super. at 426-27. The statement could have provided nuanced details to medical professionals that compelled additional tests or questions. Furthermore, nothing in the record suggests that Joseph's statement was made for the purposes of "collecting compensation benefits." Id. at 427. We agree with the motion judge's determination that Joseph's statement was trustworthy and not made with compensation in mind. As such, there was no abuse of discretion.

   C. The Directive and Voir Dire

   The Directive instructs trial judges on how to conduct the jury voir dire process. See Administrative Directive #4-07, "Jury Selection — Model Voir Dire Questions Promulgated by Directive #21-06 — Revised Procedures and Questions" (May 16, 2007), http://www.njcourts.gov/attorneys/assets/directives/dir_04_07.pdf. This Directive, promulgated by our Supreme Court, is binding upon all trial courts. State v. Morales, 390 N.J. Super. 470, 472 (App. Div. 2007) (quoting State v. Linares, 192 N.J. Super. 391, 397 (Law Div. 1983)). Its purpose "is to empanel a jury without bias, prejudice or unfairness." Gonzalez v. Silver, 407 N.J.

576, 596 (App. Div. 2009) (citing <u>Morales</u>, <u>supra</u>, 390 <u>N.J.</u>
<u>Super.</u> at 472, 475).

The Directive instructs the trial court to ask each potential
juror at least three open-ended questions. Specifically, the
Directive provides:

> In addition to the printed questions, the
> judge shall also inform the jurors in the box
> and the array that jurors will also be
> individually asked several questions that they
> will be required to answer in narrative form.
>
> . . . .
>
> The judge will then ask [the] juror each of
> the open-ended questions, to which a verbal
> response shall be given and for which
> appropriate follow up questions will be asked.
>
> . . . .
>
> Some open-ended questions must be posed
> verbally to each juror to elicit a verbal
> response. The purpose of this requirement is
> to ensure that jurors verbalize their answers,
> so the court, attorneys and litigants can
> better assess the jurors' attitudes and
> ascertain any possible bias or prejudice, not
> evident from a yes or no response, that might
> interfere with the ability of that juror to
> be fair and impartial. Open-ended questions
> also will provide an opportunity to assess a
> juror's reasoning ability and capacity to
> remember information, demeanor,
> forthrightness or hesitancy, body language,
> facial expressions, etc.
>
> . . . .
>
> The judge must ask at least three such
> questions, in addition to the biographical

question and the two omnibus qualifying questions. This is a minimum number and judges are encouraged to ask more where such action would be appropriate.

Here, the trial judge did not follow the Directive. The judge asked potential jurors the standard biographical and omnibus questions. The judge also asked, at times, several follow-up questions, and permitted the attorneys the opportunity to ask their own follow-up questions. However, these questions did not follow the Directive's mandate of three open-ended questions. As such, we find that the trial court abused its discretion and erred by not adhering to the Directive.

Having determined that the trial court erred, we next analyze whether this error warrants a reversal of the judgment. Generally, some degree of harm must be shown. R. 2:10-2. As it relates to the voir dire process, judges have an obligation to adhere to the administrative directives, and counsel also has a duty to object to the jury selection process. See Gonzalez, supra, 407 N.J. Super. at 596. In addition, to reverse a judgment, we have also held that there must be a "miscarriage of justice" resulting from the failure to follow directives. Ibid.

Here, after a review of the record, we conclude that the judge's abuse of discretion was not harmless and warrants reversal. Plaintiffs' counsel requested that the trial court follow the

14

Directive. The judge rejected this request and informed counsel that it would ask enough questions to give counsel "an idea of what type of person [the juror] might be" and that, depending upon the answer, counsel may have the opportunity to explore with additional questions at sidebar.

In several instances, the only time a few of the jurors meaningfully spoke was when they provided biographical information in front of the other seated jurors. The voir dire and open-ended questions for several jurors consisted of only responding generally to introductory questions.

Before calling a specific juror, the judge asked questions to the entire prospective jury panel, including: whether they had issues applying the law as restated by the judge, if they or any family member or friend had ever filed a lawsuit of any kind, if anyone they knew had a very good or very bad experience with a medical professional or medical organization, or if they had any existing opinions or strong feelings about a case with someone alleging negligence against a nursing home. The judge also asked if there was any other information the court or litigants should know that would hinder the juror from serving fairly and impartially. The extent of some jurors voicing their opinions or positions on these questions was by responding "no."

This process failed to provide the required opportunity to "better assess the jurors' attitudes and ascertain any possible bias or prejudice," or "assess a juror's reasoning ability." The questions did not elicit verbalized open-ended responses from each juror, and we cannot confidently conclude that the jury empaneled was both fair and impartial.

Because we reverse on other grounds, we need not address plaintiffs' remaining arguments.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION