NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0245-12T3

MARTHA C. PTASZYNSKI,
individually, and as
executor of the ESTATE
OF REGINA PTASZYNSKI,
deceased,

> APPROVED FOR PUBLICATION
>
> March 20, 2015
>
> APPELLATE DIVISION

     Plaintiff-Respondent,

v.

ATLANTIC HEALTH SYSTEMS,
INC., d/b/a MT. KEMBLE
REHABILITATION AT MORRISTOWN
MEMORIAL HOSPITAL,

     Defendant-Appellant.

_____

Argued November 18, 2014 — Decided March 20, 2015

Before Judges Yannotti, Fasciale and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7968-07.

Anthony Cocca argued the cause for appellant (Bubb, Grogan & Cocca, L.L.P., attorneys; Mr. Cocca and Michael S. Bubb, of counsel; Katelyn E. Cutinello, on the brief).

Barry R. Sugarman argued the cause for respondent (Sugarman Law, L.L.C., attorneys; Mr. Sugarman, of counsel and on the brief).

The opinion of the court was delivered by

YANNOTTI, P.J.A.D.

Defendant appeals from a judgment entered by the Law Division awarding plaintiff damages, prejudgment interest, and attorney's fees and costs, on claims arising from the care provided to Regina Ptaszynski ("Mrs. Ptaszynski") at Mt. Kemble Rehabilitation at Morristown Memorial Hospital ("MKR"). We reverse and remand the matter to the trial court for further proceedings.

## I.

This matter arises from the following facts. On June 13, 2006, following a fall at her home, Mrs. Ptaszynski was admitted to St. Peter's Hospital ("St. Peter's") with a fractured left hip and left elbow. She was eighty-six years old at the time. Prior to her fall, Mrs. Ptaszynski had been suffering from heart disease, high-blood pressure, an abnormal heart rhythm, diabetes, hypothyroidism, and peripheral vascular disease, which is a disease of the arterial blood vessels. Mrs. Ptaszynski had triple-bypass surgery in 1998, and she suffered a stroke in 2000 that left her weakened on her left side.

While at St. Peter's, Mrs. Ptaszynski suffered a severe heart attack which delayed the surgery required to repair her fractured left hip. Mrs. Ptaszynski remained at St. Peter's

until June 24, 2006, when she was transferred to MKR. Mrs. Ptaszynski developed pressure sores and a fever at MKR, and on July 19, 2006, she was transferred to Morristown Memorial Hospital ("MMH"), where the doctors discovered that one of her toes was infected with methicillin-resistant staphylococcus aureus ("MRSA"), a bacteria that is resistant to most antibiotics.

At MMH, the doctors treated Mrs. Ptaszynski's infection with antibiotics, but on July 30, 2006, her infected toe was amputated. Apparently, Mrs. Ptaszynski's condition worsened. On August 2, 2006, she was placed on a ventilator; however, in accordance with Mrs. Ptaszynski's advance directives, her family members elected to discontinue life support. She died the next day.

On September 18, 2007, plaintiff, who is Mrs. Ptaszynski's daughter and the executrix of her estate, filed a four-count complaint in the Law Division against defendant. In count one, plaintiff alleged that defendant was negligent in the care that it provided to Mrs. Ptaszynski. Defendant's negligence allegedly included the failure to comply with New Jersey's statutes and regulations relating to the care of nursing-home residents; comply with federal regulations applicable to MKR; prevent the development of pressure sores; and prevent and/or treat

infections in a timely and appropriate manner. Plaintiff claimed that, as a "direct and proximate result" of defendant's negligence, Mrs. Ptaszynski suffered personal injuries, endured physical pain and suffering and a loss of dignity, and ultimately died.

In counts two and three, plaintiff asserted claims under the Nursing Home Responsibilities and Residents' Rights Act (the "NHA"), N.J.S.A. 30:13-1 to -17. The claim in count two was asserted pursuant to N.J.S.A. 30:13-4.2 and alleged that MKR violated N.J.S.A. 30:13-3h, which requires nursing homes to comply with all applicable state and federal statutes, rules and regulations. The claim in count three was asserted pursuant to N.J.S.A. 30:13-8a based on defendant's alleged violations of Mrs. Ptaszynski's right under N.J.S.A. 30:13-5j "to a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident[.]"

In addition, in count four, plaintiff asserted a claim on behalf of Mrs. Ptaszynski's survivors under the Wrongful Death Act, N.J.S.A. 2A:31-1 to -6. Plaintiff alleged that, as a result of defendant's wrongdoing, Mrs. Ptaszynski died prematurely and her survivors had sustained economic losses.

Defendant filed an answer in which it denied liability and

asserted generally that the complaint failed to state a claim upon which relief could be granted. Defendant also asserted various defenses and claimed, among other things, that the provisions of New Jersey's Charitable Immunity Act (the "CIA"), N.J.S.A. 2A:53A-7 and -8, either barred plaintiff's claims entirely or limited her right to damages. In addition, defendant asserted that the NHA was not applicable because MKR was not a "nursing home."

On November 3, 2011, plaintiff filed a motion for partial summary judgment, seeking a determination that MKR was subject to and was required to comply with certain federal and state statutes and regulations that apply to skilled nursing care facilities and long-term skilled nursing care facilities. Defendant opposed the motion, and argued that these statutes and regulations did not apply to MKR because it is not a "nursing home."

The trial court granted plaintiff's motion. The court determined that MKR met the "very broad definition" of a "nursing home" in N.J.S.A. 30:13-2c. The court also determined that MKR was a "skilled nursing facility," and was subject to state and federal regulations that applied to those facilities, as well as the statutory and licensing standards for long-term care facilities.

Defendant thereafter filed a motion in limine in the trial court seeking, among other relief, a determination that, if MKR was considered to be a nursing home, defendant was entitled to complete charitable immunity under N.J.S.A. 2A:53A-7 for non-profit entities organized "exclusively for religious, charitable or educational purposes[.]" Alternatively, defendant argued that if MKR is considered to be a hospital, it is entitled to the limited charitable immunity under N.J.S.A. 2A:53A-8, which provides a $250,000 cap on damages caused by the negligence of non-profit entities "organized exclusively for hospital purposes[.]" The judge denied the motion without prejudice, ruling that defendant could file a motion after the trial and seek to mold the verdict on this basis.

The matter was tried before a jury, which found that defendant was negligent and its negligence "was a proximate cause of harm" to Mrs. Ptaszynski. The jury also found that defendant was liable under the NHA because defendant violated "one or more of the rules, regulations, or State or Federal statutes applicable" to Mrs. Ptaszynski's care, and that such violation "was a proximate cause of harm" to her.

The jury awarded plaintiff $250,000 on the negligence claim, and $250,000 on the claims asserted under the NHA. In addition, the jury awarded Mrs. Ptaszynski's survivors $50,000

on the wrongful death claim. The judge granted defendant's motion and dismissed plaintiff's claim for punitive damages.

Thereafter, defendant filed a motion to cap the damages award at $250,000 pursuant to N.J.S.A. 2A:53A-8. The judge denied the motion. The judge ruled that the limitation on damages in N.J.S.A. 2A:53A-8 only applied to the damages awarded on the negligence claim, and that award did not exceed the $250,000 statutory cap. The court entered a final judgment for plaintiff, which included an award of attorney's fees pursuant to the NHA. This appeal followed.

## II.

Defendant argues that the trial court erred by permitting plaintiff to pursue a claim under N.J.S.A. 30:13-4.2 for a violation of defendant's "responsibility" under N.J.S.A. 30:13-3h to comply with applicable state and federal statutes and regulations. Because this argument was not raised below, we consider the argument under the plain error standard in Rule 2:10-2.

The NHA was enacted in 1976 to declare "a bill of rights" for nursing home residents and define the "responsibilities" of nursing homes. L. 1976, c. 120, § 1, codified at N.J.S.A. 30:13-1. The "rights" of nursing home residents are set forth in N.J.S.A. 30:13-5a to n, and include a resident's right to:

manage his or her own financial affairs, unless a guardian authorizes the nursing home to do so; privacy; retain the services of his or her own physician; unrestricted communication and personal visits at a reasonable hour; food that meets religious dietary requirements; and "a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident[.]" Ibid.

Furthermore, the responsibilities of a nursing home are defined in N.J.S.A. 30:13-3a to j. They include the responsibility to: maintain complete records of a resident's funds and personal property; provide for the spiritual needs and wants of residents; admit only the number of residents for which it could safely provide care; ensure applicants and residents are not subject to discrimination based on age, race, religion, sex or national origin; ensure that drugs are not employed as punishment or for the convenience of staff; permit access by legal services staff; ensure compliance with all applicable state and federal statutes, rules and regulations; provide residents with a written statement of services and charges; and provide the resident or family with a copy of the admissions contract. Ibid.

As initially enacted in 1976, the NHA provided in N.J.S.A. 30:13-8a that:

> [a]ny person or resident whose <u>rights</u> as defined herein are violated shall have a cause of action against any person committing such violation. The Department of Health and Senior Services[1] may maintain an action in the name of the State to enforce the provisions of this act and any rules or regulations promulgated pursuant to this act. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for their violation. Any plaintiff who prevails in any such action shall be entitled to recover reasonable attorney's fees and costs of the action.
>
> (Emphasis added).]

Thus, under the NHA as initially enacted, a person could only bring a claim for a violation of a nursing home resident's "rights" as defined in the law. The provisions of <u>N.J.S.A.</u> 30:13-8a did not authorize a person to bring an action to enforce the nursing home's "responsibilities" as defined in the law. Under <u>N.J.S.A.</u> 30:13-8a, only the Department of Health (the "DOH") could bring such an action.

The NHA was amended in 1991, adding two statutory sections, which are codified in <u>N.J.S.A.</u> 30:13-4.1 and <u>N.J.S.A.</u> 30:13-4.2. <u>L.</u> 1991, <u>c.</u> 262, §§ 1, 2. These statutes apply when a nursing home requires a security deposit before admitting a person to

---

[1] The Department is now known as the Department of Health. <u>See</u> <u>L.</u> 2012, <u>c.</u> 17 (reorganizing and renaming the Department as the DOH and transferring certain programs to a newly created Division of Aging Services).

the facility. Among other things, N.J.S.A. 30:13-4.1 establishes requirements for the investment of security deposits in interest-bearing or dividend-yielding accounts, notifying residents about the investments, and the return of the deposits with the interest or earnings, less allowed deductions for administrative expenses, when the resident no longer resides in the nursing home.

In addition, N.J.S.A. 30:13-4.2 provides that a person "shall have a cause of action against the nursing home for any violation of this act." (Emphasis added). Under N.J.S.A. 30:13-4.2, the DOH is authorized to bring an action to enforce the provisions of "this act and any rules and regulations promulgated pursuant to this act." Ibid. (Emphasis added).

As we stated previously, in count two of her complaint, plaintiff asserted a claim under N.J.S.A. 30:13-4.2, based on defendant's alleged violation of its "responsibility" under N.J.S.A. 30:13-3h to ensure "compliance with all applicable State and federal statutes and rules and regulations." We must determine whether N.J.S.A. 30:13-4.2 allows a private party such as plaintiff to pursue a cause of action for this alleged violation of the NHA.

Our "paramount goal when interpreting a statute" is to ascertain the Legislature's intent. DiProspero v. Penn, 183 N.J.

477, 492 (2005). In general, the "best indicator of that intent is the language of the statute." _Ibid._ We must give the words of a statute "their ordinary meaning and significance, and read them in context with the related provisions so as to give sense to the legislation as a whole[.]" _Ibid._ (internal citations omitted). If the statutory language may lead to more than one plausible interpretation, we will examine extrinsic evidence such as legislative history and committee reports to determine the Legislature's intent. _Id._ at 492-93.

The plain language of _N.J.S.A._ 30:13-4.2 and the context in which the phrase "this act" is used in _N.J.S.A._ 30:13-4.1 and _N.J.S.A._ 30:13-4.2 indicate that the Legislature intended the phrase to mean the amendatory legislation enacted in 1991, not the whole of the NHA. For example, _N.J.S.A._ 30:13-4.1g authorizes the Commissioner of Banking (the "COB") to adopt "rules and regulations with respect to the establishment of the method of computing the interest due . . . pursuant to the provisions of _this act_. . . ." (Emphasis added).

The authority granted to the COB pertains solely to the computation of interest on security deposits under _N.J.S.A._ 30:13-4.1, not to other provisions of the NHA. The amendatory legislation also states that "this act" shall take effect on the first day of the sixth month after its enactment. _L._ 1991, _c._

262, § 3. The term "this act" as used in this section of the legislation obviously refers to the statutory amendments, not the NHA as a whole.

There is no indication that, in enacting the amendments to the NHA, the Legislature intended to confer upon nursing home residents the ability to bring actions to enforce any violation of the NHA. The 1991 legislation imposed upon nursing homes new, specific requirements pertaining to security deposits, and allowed residents to bring actions to enforce those requirements, not other responsibilities that nursing homes have under the law.

Even if we viewed the phrase "this act" as ambiguous when read in the context of the entire NHA, the conclusion that the phrase "this act" in N.J.S.A. 30:13-4.2 only applies to the 1991 amendments is supported by the legislative history of the bill. The Statement of the Senate Senior Citizen and Veterans Affairs Committee to Senate, No. 1560, dated January 25, 1990, which was later enacted as L. 1991, c. 262, provides in pertinent part that "a person shall have a cause of action against a nursing home for any violations of the provisions of the bill." (Emphasis added). The Statement of the Assembly Senior Citizens Committee to Senate, No. 1560, dated June 17, 1991, included an identical statement. These legislative statements indicate that

the amendatory legislation was intended to allow individuals to assert a cause of action for a violation of the provisions of the "bill" relating to security deposits, not for a violation of any other provision of the NHA.

We therefore conclude that <u>N.J.S.A.</u> 30:13-4.2 does not permit plaintiff to assert a cause of action for the alleged failure by defendant to fulfill its responsibility under <u>N.J.S.A.</u> 30:13-3h to comply with all applicable state and federal statutes, rules and regulations. The trial court erred by permitting plaintiff to pursue the claim in count two.

As noted previously, in counts two and three, plaintiff asserted two claims under the NHA. The jury returned a single verdict on both NHA claims. Because the claim in count two is not permitted by the NHA, the verdict on the NHA claims and the award of counsel fees pursuant to that law must be set aside. The matter is remanded for entry of an order dismissing with prejudice the claim asserted in count two, and for further proceedings on count three, as discussed later in this opinion.

III.

Defendant also argues that the verdicts rendered for plaintiff on the negligence and wrongful death claims should be reversed on several grounds. We agree for the following reasons.

13

A. <u>Expert Testimony of Plaintiff's Nursing Expert</u>

At trial, plaintiff asked the court to qualify Ilene Warner-Maron ("Warner-Maron") as an expert in various nursing care standards, the federal and state statutes and regulations that apply to MKR, and the treatment of pressure sores. The judge granted plaintiff's application.

The judge also told the jury he was "satisfied" Warner-Maron was qualified as an expert "in the field of nursing standards of care, the nursing law, clinical requirements for treatment of pressure ulcers in a nursing facility," and that Warner-Maron could testify and offer her opinions on these subjects. In his final instructions to the jury, the judge reiterated that Warner-Maron had been called as an expert in "nursing law."

Generally, expert opinion testimony on matters of domestic law is not admissible. <u>State v. Grimes</u>, 235 <u>N.J. Super.</u> 75, 80 (App. Div.), <u>certif. denied</u>, 118 <u>N.J.</u> 222 (1989). Rather, the trial judge has the exclusive responsibility to instruct the jury on the law to be applied to avoid the "danger . . . that the jury may think that the 'expert' in the particular branch of the law knows more than the judge[.]" <u>Ibid.</u> (quoting <u>Marx & Co. v. Diners' Club, Inc.</u>, 550 <u>F.</u>2d 505, 512 (2d Cir.), <u>cert. denied</u> 434 <u>U.S.</u> 861, 98 <u>S. Ct.</u> 188, 54 <u>L. Ed.</u> 2d 134 (1977)).

Although it was permissible for the judge to allow Warner-Maron to cite specific federal and state statutes and regulations as support for her opinions on the applicable standard of care, the judge erred by permitting her to testify extensively as an expert in "nursing law."

The judge also erred because he permitted Warner-Maron to provide her opinion of the meaning of the word "dignity" in N.J.S.A. 30:13-5j. Defense counsel had objected to this testimony on the ground that it improperly allowed Warner-Maron to interpret a statute. The judge overruled the objection because plaintiff's claim for damages included the loss by Mrs. Ptaszynski of the enjoyment of life. The judge observed that "dignity can play a role in loss of enjoyment of life." Warner-Maron's testimony was specifically directed, however, to the meaning of the statute, not plaintiff's damage claim.

The judge told the jury that it was not bound by the testimony of an expert, but he merely read N.J.S.A. 30:13-5j to the jurors and did not provide any guidance to the jury as to its meaning. The jury was left with only Warner-Maron's interpretation of the statute to guide its deliberations.

We are convinced that the judge's erroneous rulings regarding Warner-Maron's testimony had the clear capacity to affect the jury's decisions on the negligence and wrongful death

claims, and the errors required reversal of those verdicts.

B. <u>Mrs. Ptaszynski's Pre-Existing Conditions</u>

At the charge conference, defense counsel asked the judge to instruct the jury to consider Mrs. Ptaszynski's pre-existing conditions in determining liability on the negligence claim. The judge determined that the charge was not warranted because there was no evidence indicating that Mrs. Ptaszynski had suffered from pressure sores, an infection "or other things that were claimed to be the cause of death" before she entered MKR.

To sustain a cause of action for negligence, a plaintiff must prove that the defendant's negligent conduct was the proximate cause of the asserted harm. <u>Skripek v. Bergamo</u>, 200 <u>N.J. Super.</u> 620, 633-34 (App. Div.), <u>certif. denied</u>, 102 <u>N.J.</u> 303 (1985). However, "'a defendant whose acts aggravate a plaintiff's preexisting condition is liable only for the amount of harm actually caused by the [defendant's] negligence.'" <u>Scafidi v. Seiler</u>, 119 <u>N.J.</u> 93, 110 (1990) (quoting <u>Ostrowski v. Azzara</u>, 111 <u>N.J.</u> 429, 439 (1988)).

In a negligence case with a single alleged cause of harm, the jury is instructed on proximate cause in accordance with the standard "but for" instruction. <u>Anderson v. Picciotti</u>, 144 <u>N.J.</u> 195, 202 (1996). The instruction allows a plaintiff to recover only if the plaintiff can establish that the injury would not

have occurred "but for" the defendant's negligence. <u>Verdicchio v. Ricca</u>, 179 <u>N.J.</u> 1, 23 (2004). However, in cases where there is sufficient evidence to show within a reasonable degree of medical probability that the alleged negligent treatment may have increased the risk of harm posed by an individual's pre-existing injury, the jury must be instructed to consider whether the increased risk was a substantial factor in producing the ultimate result. <u>Scafidi</u>, <u>supra</u>, 119 <u>N.J.</u> at 108-14. <u>See also Model Jury Charge</u> (Civil), 5.50E, Pre-Existing Condition — Increased Risk/Loss of Chance — Proximate Cause (2014).

In this case, defendant presented testimony from an expert in geriatrics and internal medicine. He testified that Mrs. Ptaszynski had been taking blood-pressure medication. In addition, a study at MMH showed that both arteries in her leg were blocked. The expert testified that, with "no blood or little blood going to the heels," eventually a person "would develop a bedsore there." He further testified that, in his opinion, given Mrs. Ptaszynski's other health problems, she "was a little bit of a setup for bedsores."

Another defense expert testified that Mrs. Ptaszynski's pressure sores "absolutely had nothing to do" with the MRSA infection that caused her death. According to this witness, tests showed that there was no MRSA bacteria present in any of

Mrs. Ptaszynski's pressure sores. The expert opined that Mrs. Ptaszynski's toe infection was caused by a hammertoe and ingrown toenail, and by vascular compromise.

In view of the evidence of Mrs. Ptaszynski's pre-existing health conditions, and the experts' testimony, a reasonable jury could have found that any harm to Mrs. Ptaszynski, including her death, was caused by her pre-existing conditions, not the alleged negligent care attributed to defendant. We are therefore convinced that the judge erred by failing to provide the jury with a Scafidi instruction.

C. Double Recovery

In this case, plaintiff sought damages for Mrs. Ptaszynski's personal injuries, mental anguish, loss of dignity and death. Plaintiff's evidence did not, however, distinguish between the injuries and harm caused by defendant's alleged violations of the NHA and its alleged negligence.

"[I]t is fundamental that no matter under what theories liability may be established, there cannot be any duplication of damages." P. v. Portadin, 179 N.J. Super. 465, 472 (App. Div. 1981). The common law prohibits a double recovery for the same injury. Buccheri v. Montgomery Ward & Co., 19 N.J. 594, 605 (1955). Furthermore, it would be inconsistent with well-established principles to require a tortfeasor to pay twice for

the same damages caused by a single wrong. Alfone v. Sarno, 87 N.J. 99, 115 (1981).

Here, the jury was not instructed that it could not award plaintiff damages for defendant's violations of the NHA and its negligence based upon the same injuries or harm to Mrs. Ptaszynski. As noted, the jury awarded plaintiff $250,000 for the NHA violations, and $250,000 on the negligence claim. Based on the judge's instructions, those awards could have been based on the same injuries or harm.

Plaintiff argues that the evidence allowed the jury to infer that Mrs. Ptaszynski suffered different injuries and harm from defendant's negligence and its violations of the NHA. Plaintiff notes that the judge had instructed the jury that plaintiff was only entitled to fair and reasonable compensation. Plaintiff contends that the instructions prevented the possibility of a double recovery for the same injuries or harm.

We do not agree. If properly instructed, the jury could have allocated the damages to the separate claims, based on the different theories of liability being asserted, but the jury was not provided with those instructions. We cannot assume that the jury allocated its damage awards based on the different theories of recovery being advanced in this case.

Accordingly, the verdicts and damage awards on the

negligence and wrongful death claims are reversed and the matter remanded for a new trial on these claims.

IV.

We turn to several other issues that defendant has raised on appeal.

A. Charitable Immunity

Defendant argues that the judge erred by refusing to consider its pre-trial motion for immunity under the CIA. Defendant further argues that the judge misinterpreted the CIA when he denied its post-verdict motion to mold the verdict. In support of its contention that it is entitled to the limited immunity afforded to hospitals under N.J.S.A. 2A:53A-8, defendant argues that it is not a "nursing home" under the NHA.

The CIA provides complete immunity from liability for damages to any "nonprofit corporation, society or association organized exclusively for religious, charitable or educational purposes" for damages caused by its negligence when the injured person "is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association[.]" N.J.S.A. 2A:53A-7(a). In addition, the CIA provides a $250,000 limitation on the damages for negligence that may be awarded against a nonprofit corporation, society or association that is "organized exclusively for hospital purposes." N.J.S.A. 2A:53A-8.

The CIA therefore immunizes certain nonprofit entities for simple negligence, but not for intentional, reckless or grossly negligent conduct. <u>Hardwicke v. Am. Boychoir Sch.</u>, 188 <u>N.J.</u> 69, 97 (2006). The immunity provided by the CIA applies both to statutory and common-law claims. <u>Id.</u> at 97 n.11.

Here, the judge initially refused to consider whether defendant was entitled to charitable immunity because defendant did not bring the motion raising this issue until the eve of trial. Moreover, the record reflects that, in support of that motion, defendant presented the judge with factual material that had not been presented during discovery.

As noted, the judge allowed defendant to make a post-verdict motion on the immunity issue, and then denied the motion. The judge apparently found that the $250,000 limitation on damages in <u>N.J.S.A.</u> 2A:53A-8 applied to defendant, but ruled that the issue was moot because the $250,000 damage award on the negligence claim did not exceed the statutory limit.

We are convinced that the judge erred by assuming that the limitation on damages only applies to plaintiff's negligence claims. When a plaintiff's cause of action is based on a statute, and the defendant alleges that it is entitled to immunity under the CIA, the claims must be reviewed to determine whether the conduct that is statutorily prohibited falls within

the scope of common law negligence. Hardwicke, supra, 188 N.J. at 94-99. Therefore, on remand, the trial court must consider whether plaintiff's NHA and wrongful death claims are essentially negligence-based and also subject to the immunities provided by the CIA.

Furthermore, if the trial court finds that that defendant is not a "hospital" for purposes of immunity under the CIA, it must determine whether defendant is entitled to complete immunity under N.J.S.A. 2A:53A-7a. To qualify for immunity under this statute, defendant must establish that it was organized "exclusively for religious, charitable or educational purposes." Ibid. (Emphasis added).

B. Whether MKR is a "nursing home" under the NHA

The term "nursing home" is defined in the NHA to mean

> any institution, whether operated for profit or not, which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals who are suffering from acute or chronic illness or injury, or are crippled, convalescent or infirm and are in need of such treatment or care on a continuing basis. Infirm is construed to mean that an individual is in need of assistance in bathing, dressing or some type of supervision.

> [N.J.S.A. 30:13-2c.]

In its answer, defendant asserted that it is not a "nursing home" as defined in the NHA and therefore the NHA does not

apply. Further, in response to plaintiff's motion for partial summary judgment, and in its motion in limine on the charitable immunity defense, defendant argued that it was a hospital, not a nursing home.

We note, however, that defendant never filed a motion seeking summary judgment on the NHA claims on this basis. On appeal, defendant's arguments regarding the NHA are raised in support of its contention that it is entitled to charitable immunity under N.J.S.A. 2A:53A-8. Nevertheless, plaintiff's ability to maintain her cause of action in count three turns upon whether defendant's facility is a "nursing home" for purposes of the NHA.

We are convinced that the record does not provide sufficient information to determine whether MKR is a "nursing home" for purposes of the NHA. Defendant contends that the NHA was not intended to apply to a hospital-based facility like MKR, where persons are admitted for fewer than thirty days for sub-acute rehabilitation. In response, plaintiff contends that defendant operates a hospital-based, long-term care facility which meets the definition of a nursing home in N.J.S.A. 30:13-2c.

The record indicates that the DOH issued two licenses to defendant. One license authorized defendant to operate a

comprehensive rehabilitation hospital consisting of thirty-eight beds. The other license permitted defendant to operate a hospital-based, long-term care facility with forty beds. The licenses do not state, however, that MKR is licensed to operate as a nursing home.

We also note that nothing in the record indicates that the DOH ever issued a separate certificate of need ("CN") to defendant authorizing the establishment of a nursing home. N.J.S.A. 26:2H-7 provides that a CN is required for the construction or expansion of "health care facilities," a term defined in N.J.S.A. 26:2H-2a to include "nursing homes." See also N.J.S.A. 26:2H-7.2 and -7.3 (exempting certain nursing homes from the CN requirement).

In addition, it is not clear from the record whether MKR is a facility that would be permitted to provide care on "a continuing basis", which is an essential element of the definition of a "nursing home" in the NHA. N.J.S.A. 30:13-2c. As defendant notes, patients are treated temporarily at MKR, with the expectation that they will be moved to another facility for long-term or "continuing" care if needed.

Plaintiff insists that, because MKR is required to comply with certain standards that apply to the care provided to persons in nursing homes, MKR must be considered a "nursing

home" under the NHA. Defendant maintains, however, that MKR is a "hospital" even though those standards also may apply to the care provided to persons treated at MKR. The trial court should address these arguments on remand.

The parties should be afforded an opportunity to present additional evidence in support of their respective arguments on whether MKR is a "nursing home" for purposes of the NHA. This court's recent decision in <u>Bermudez v. Kessler Institute for Rehabilitation</u>, ____ <u>N.J. Super.</u> ____ (App. Div. 2015), may provide the trial court and the parties with some guidance in resolving this issue. There, the panel held that a comprehensive rehabilitation hospital is not a "nursing home" for purposes of the NHA. <u>Id.</u> at ____ (slip op. at 4).

We note that defendant has also argued that: (1) plaintiff's claims should have been dismissed because she failed to identify deviations by individual practitioners; (2) the trial judge erred by allowing Warner-Maron to testify as to the cause of Mrs. Ptaszynski's death; (3) the federal regulations do not establish a cause of action; (4) the federal and state statutes and regulations relied upon by plaintiff do not establish the applicable standard of care; (5) the judge erred by precluding the admission of the results of the DOH's surveys

of MKR; and (6) the counsel fee award should be set aside. In view of our decision, we need not address these arguments.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0245-12T3