**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0426-23

ESTATE OF FRANCIS
EAGIN, III, by Administrator
FRANCIS EAGIN, IV,[1] and
FRANCIS EAGIN, IV,
Individually,

     Plaintiffs-Appellants,

v.

CAREONE AT EVESHAM,

     Defendant-Respondent.

Argued January 23, 2024 – Decided February 12, 2024

Before Judges Sumners and Rose.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1079-20.

Sherri Lee Warfel argued the cause for appellant (Pellettieri Rabstein & Altman, attorneys; Sherri Lee

---

[1] Improperly pled as Francis Eagin, Jr. Because Eagin and his son bear the same name, we use "Eagin" to signify decedent and "son" to signify Francis Eagin, IV.

Warfel, of counsel and on the briefs; Sungkyu S. Lee on the briefs).

Anthony Cocca argued the cause for respondent (Cocca & Cutinello, LLP, attorneys; Anthony Cocca and Katelyn E. Cutinello, of counsel and on the briefs).

PER CURIAM

Francis Eagin, III died while hospitalized the day after he was released from defendant CareOne at Evesham. Eagin was twice admitted to CareOne's facility for rehabilitation after he was discharged from different hospitals during a three-month period in 2018, for a total of sixty-seven days. At the time of Eagin's admission, CareOne was licensed as a "Long Term Care Facility."

Eagin's estate and his son, as administrator and in his individual capacity, (collectively, plaintiffs) filed a nursing malpractice complaint against CareOne, pleading: common law negligence (count one); violations of federal law (count two); violations of the Nursing Home Responsibilities and Residents' Rights Act (NHA), N.J.S.A. 30:13-1 to -17 (count three); punitive damages under the Punitive Damages Act (PDA), N.J.S.A. 2A:15-5.9 to -5.17 (count four); and, on behalf of Eagin's survivors, a claim under the Wrongful Death Act, (count five).

Following the completion of fact discovery, CareOne moved for partial summary judgment, seeking dismissal of portions of the first count, and counts two through four. CareOne argued the unit of its facility where Eagin was

2

treated does not fall within the NHA's definition of a nursing home; the federal and state regulations and statutes cited in plaintiffs' complaint do not permit private causes of action; and plaintiffs failed to demonstrate a prima facie claim for punitive damages.

Citing CareOne's "Long Term Care Facility" license and a recently-revised jury charge,[2] plaintiffs countered that a facility licensed as a long-term care facility satisfied the definition of a nursing home under the NHA, "whether the resident [wa]s in for long-term or sub[]acute rehabilitation." Plaintiffs also argued their punitive damages claim was supported by the evidence.

In a written statement of reasons accompanying a June 30, 2023 order, the judge concluded there was no competent evidence in the record to support plaintiffs' claim that CareOne's facility constituted a nursing home as defined under the NHA. Accordingly, the judge dismissed all claims relating to the NHA in counts one through three but permitted plaintiffs to "allege that any violations of the federal and state regulations constitute evidence of [CareOne]'s negligence." The judge also found plaintiffs failed to establish a prima facie claim for punitive damages.

---

[2] Model Jury Charges (Civil), 5.77, "Violations of Nursing Home Statutes or Regulations – Negligence and Violations of Nursing Home Residents' Rights Claims" (rev. Nov. 2023) (MJC 5.77).

In an oral decision accompanying an August 25, 2023 order, the judge denied plaintiffs' ensuing motion for reconsideration of their NHA claims. Plaintiffs did not move for reconsideration of the dismissal of their punitive damages claim.

By leave granted, plaintiffs appeal from both orders, arguing the motion judge misapplied the controlling legal principles. After de novo review of the record, Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021), we conclude additional discovery is necessary to resolve the issues raised on this appeal as they relate to the definition of a nursing home under the NHA. We therefore vacate the orders as they pertain to plaintiffs' NHA claims, only, and remand for further proceedings consistent with this opinion. However, we decline to disturb the June 30, 2022 order dismissing plaintiffs' punitive damages claim.

I.

We summarize the pertinent facts from the motion record, noting for purposes of this appeal, the facts are largely undisputed. According to the report of plaintiffs' expert, Barbara Darlington, RN, BSN, MS, LNHA, Eagin was sixty-nine years old on June 15, 2018, when he "was admitted from home to Cooper University Hospital . . . for evaluation and treatment of abdominal pain with associated urinary retention."

A-0426-23

Upon admission, Eagin had a host of other medical diagnoses including: "Parkinson's disease, hypertension, diabetes, coronary artery disease on anticoagulation, left above the knee amputation, hypothyroidism, hypercholesterolemia, atrial fibrillation, hypertrophy of prostate with urinary obstruction, chronic indwelling Foley catheter, and hematuria." Eagin also had a "friction/shear wound" on his buttocks. He presented as "intermittently confused," explained by his family as his "baseline mental status." While hospitalized, Eagin's treatment included the insertion of a three-way Foley catheter and nasogastric intubation.

At his son's request, on July 2, 2018, Eagin was transferred to another hospital for a second opinion. Eagin remained hospitalized for one month and was treated for persistent fevers. He was provided physical, occupational, and speech therapies.

In her report, Darlington stated on August 11, 2018, Eagin was transferred to CareOne "for further treatment and rehabilitation." She noted Eagin "required extensive assistance of one person for feeding via the nasogastric tube." About one month after he was admitted to CareOne, Eagin's nasogastric tube was removed but the Foley catheter remained in place. Eagin "was non[] ambulatory." He required assistance "via a mechanical lift to a wheelchair[,]

5

which had to be wheeled by others." Darlington summarized CareOne's care plan, physician's orders, and nursing treatment.

At his son's request following another fever, Eagin was transferred to a third hospital on October 9, 2018. Hospitalized for one month, Eagin was diagnosed and treated for his wounds and "sepsis secondary to urinary tract infection."

On November 9, 2018, Eagin "was discharged and returned to CareOne . . . in stable condition." Citing the "Resident Evaluation" form completed that same day, Darlington noted Eagin's wounds.

The following week, on November 17, 2018, Eagin was transferred and admitted to a fourth hospital "for evaluation and treatment of fever with leukocytosis." He died in that hospital the next day. Darlington noted "Eagin was a patient at CareOne" for about sixty-seven days.

II.

A.

We review a decision on summary judgment employing the same standard as the motion court. See Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We therefore measure the court's findings and conclusions "against the standards set forth in Brill." Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 498

A-0426-23

(App. Div. 2000). "We must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" Samolyk, 251 N.J. at 78 (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1994)); see also, R. 4:46-1(c). We owe no deference to the trial court's legal analysis or interpretation of a statute. In re Registrant H.D., 241 N.J. 412, 418 (2020).

The crux of the issues presented on appeal is whether CareOne's "facility" fell within the NHA's definition of a "nursing home." "For the purposes of [the NHA,]" a "nursing home" is defined as

> any institution, whether operated for profit or not, which maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals with acute or chronic illness or injury, or a physical disability, or who are convalescing, or who are in need of assistance in bathing, dressing, or some other type of supervision, and are in need of such treatment or care on a continuing basis.

> [N.J.S.A. 30:13-2(c).]

In essence, plaintiffs argue "the definition's focus is not on the patient but the institution itself." CareOne counters Eagin was admitted to its "skilled nursing facility for short-term subacute rehabilitation not long-term care" and,

as such, he "did not receive '<u>extended</u> medical and nursing treatment or care' on a '<u>continuing</u> basis.'"  Resolution of the issues begins with our interpretation of the statute, implicating well-established principles.

"The object of statutory interpretation is to effectuate the intent of the Legislature, as evidenced by the plain language of the statute, its legislative history and underlying policy, and concepts of reasonableness."  <u>State v. Courtney</u>, 234 N.J. 77, 85 (2020).  We "begin[] with the words of the statute and ascribe[] to them their ordinary meaning," reading "disputed language 'in context with related provisions so as to give sense to the legislation as a whole.'"  <u>Ryan v. Renny</u>, 203 N.J. 37, 54 (2010) (quoting <u>DiProspero v. Penn</u>, 183 N.J. 477, 492 (2005)).  "If the statute is clear on its face, the analysis is complete, and it must be enforced according to its terms."  <u>Pfannenstein v. Surrey</u>, 475 N.J. Super. 83, 95 (App. Div.) <u>certif. denied</u>, 254 N.J. 517 (2023).  "If, however, a literal interpretation of a provision would lead to an absurd result or would be inconsistent with the statute's overall purpose, 'that interpretation should be rejected' and 'the spirit of the law should control.'"  <u>Ibid.</u> (quoting <u>Hubbard v. Reed</u>, 168 N.J. 387, 392-93 (2001)).

We previously chronicled the legislative history underpinning the NHA. <u>See</u> <u>Bermudez v. Kessler Inst. for Rehab.</u>, 439 N.J. Super. 45, 53-56 (App. Div.

2015); see also Est. of Burns v. CareOne at Stanwick, LLC, 468 N.J. Super. 306, 313 (App. Div. 2021). We therefore need not repeat our discourse in the same level of detail. Suffice it to say, the driving force of the enactment was the Legislature's intent to address concerns about "the condition of the nursing homes and the personal care facilities for the aged in this State." Bermudez, 439 N.J. Super. at 53 (quoting S.C.R. 15 (1974)).

Following the recommendations of the Nursing Home Study Commission, the NHA was enacted in 1976. Id. at 55. The act's purpose, outlined in the statement to the bill, was to establish a bill of rights and responsibilities to address "the inferior treatment" often experienced by nursing home residents. S. Insts., Health & Welfare Comm., Statement to S. 944, at 1 (June 4, 1976). Comparing the enactment to its federal counterpart, the Legislature declared "this bill makes similar standards of care applicable to all nursing homes and nursing home residents in the State and, moreover, makes such standards an expression of legislative policy and intent." Ibid.

Pursuant to N.J.S.A. 30:13-8(a), a plaintiff whose rights are violated under the NHA "shall have a cause of action against any person committing such violation." The same provision permits fee-shifting and punitive damages. Ibid.

Under certain circumstances that are not relevant here, treble damages may be awarded.  N.J.S.A. 30:13-8(b).

Nearly a decade after the NHA was enacted, our Supreme Court set forth several characteristics of a nursing home in a decision that implicated the rights of a comatose nursing home resident.  In re Conroy, 98 N.J. 321, 375-377 (1985).  The Court observed nursing home residents are "a particularly vulnerable" and "quite elderly" population, averaging eighty-two years old nationwide.  Id. at 375.  Most residents:  "suffer from chronic or crippling disabilities and mental impairments[] and need assistance in activities of daily living"; "will eventually die" in the nursing home; "and their illnesses and deaths will be viewed as consistent with their advanced age and general infirmity."  Ibid.

The Court also noted the absence of surviving family, causing "severe" social isolation.  Ibid.  Many nursing home residents "never have visits from anyone and few ever spend nights away except for medical reasons."  Ibid.  "Thus, the involvement of caring family members . . . may not be a realistic possibility."  Ibid.  Further, "physicians play a much more limited role in nursing homes than in hospitals."  Ibid.  Finally, "nursing homes generally are not faced with the need to make decisions about a patient's medical care with the same speed that is necessary in hospitals."  Id. at 377.

In Bermudez, we granted the defendant health care facility leave to appeal from an order denying its motion for partial summary judgment regarding a patient's claims that asserted violations of the NHA. 439 N.J. Super. at 49. We considered whether the facility, which was licensed as "a comprehensive rehabilitation hospital," satisfied the definition of nursing home under the act. Id. at 50.

Citing the NHA's legislative history, we observed "although the Legislature wrote a broad definition of 'nursing home,' it nevertheless intended to limit the statute's reach to nursing homes and similar facilities." Id. at 55. We noted the absence of anything in the legislative history "that the Legislature sought to include an entity such as a comprehensive rehabilitation hospital" in the NHA. Id. at 56. We were persuaded that "[h]ad the Legislature intended to apply the requirements of the [NHA] to institutions such as comprehensive rehabilitation hospitals, it would undoubtedly have used a more inclusive term than 'nursing home,' such as 'health care entity,' in the title and text of the legislation." Ibid. We therefore reversed the denial of summary judgment on the plaintiff's NHA claims. Ibid.

A few months after we issued our decision in Bermudez, we decided Ptaszynski v. Atlantic Health Systems, Inc., where we reversed a jury verdict,

awarding the plaintiff damages and counsel fees against the defendant health care facility. 440 N.J. Super. 24, 29 (App. Div. 2015). We considered the defendant's contentions – raised in the context of its charitable immunity argument under N.J.S.A. 2A:53A-8 – that its facility was not a nursing home within the meaning of the NHA. Id. at 43. The defendant argued its facility was "hospital-based . . . where persons are admitted for fewer than thirty days for sub[]acute rehabilitation." Ibid. The plaintiff countered the facility was "a hospital-based, long-term care facility," thereby satisfying the NHA's definition of a nursing home. Ibid.

Referencing the record, we noted the defendant was licensed to operate both "a comprehensive rehabilitative hospital consisting of thirty-eight beds" and "a hospital-based, long-term care facility with forty beds." Ibid. However, neither license stated the facility "[wa]s licensed to operate as a nursing home." Ibid. Nor was there any evidence in the record that the Department of Health (DOH) had "issued a separate certificate of need" to the facility "authorizing the establishment of a nursing home." Ibid. (citing N.J.S.A. 26:H-2(a)).

We further observed there was no evidentiary support that the facility "would be permitted to provide care on a 'continuing basis,' which is an essential element of a 'nursing home' in the NHA." Ibid. We noted "patients [we]re

treated temporarily at [the facility], with the expectation that they w[ould] be moved to another facility for long-term or 'continuing' care if needed." Ibid. Choosing not to decide the issue on the record presented on appeal, we remanded for the court to consider the arguments, guided by our decision in Bermudez. Id. at 44.

More recently, in Estate of Burns, we granted the defendant health care facility leave to appeal from a trial court order that granted the plaintiff partial summary judgment on its claim that the facility was subject to the Rooming and Boarding House Act, N.J.S.A. 55:13B-1 to -21. 468 N.J. Super. at 310. Contending it "operate[d] an assisted living residence," the defendant argued there was no private cause of action under the bill of rights applicable to assisted living residences. Id. at 312. We agreed and reversed the court's decision. Id. at 322.

We also rejected the court's suggestion that if the plaintiff demonstrated at trial the facility "was operating something other than an assisted living residence, a jury could consider and ultimately find a violation of the bill of rights applicable to that other type of facility." Ibid. We reasoned the defendant's "facility [wa]s governed by the license issued to it as an assisted living facility." Ibid. We noted if the facility were operating something other

than an assisted living facility, the DOH – and not a judge or jury – should make that determination.  Ibid.

B.

Against these legal principles, we turn to the parties' contentions in the present matter.  The parties do not dispute that CareOne is licensed as a long-term care facility.  Nor is there any contention that CareOne is a hospital or "hospital-based."

Citing the scope and purpose section of the licensure regulations for long-term care facilities, plaintiffs argue all such facilities are nursing homes.  For example, N.J.A.C. 8:39-1.1, provides "[t]his chapter contains rules and standards intended to assure the high quality of care delivered in long-term care facilities, commonly known as nursing homes, throughout New Jersey." (Emphasis added).  Plaintiffs also cite the statutory scheme for long-term care facility licensure and certificates of need, arguing section N.J.S.A. 26:2H-7 of the Health Care Facilities Planning Act (HCFPA), N.J.S.A. 26:2H-1 to -26, requires all nursing homes "to obtain a 'Long-Term Care Facility' license."

CareOne counters the HCFPA and its related regulations are not referenced in the NHA's definition of a nursing home and, as such, they do not apply.  CareOne maintains Eagin "was admitted to defendant's skilled nursing

14

care facility for short-term subacute rehabilitation <u>not</u> long-term care." Further, CareOne asserts there neither exists a specific license in this state for a "nursing home" nor a "subacute rehabilitation unit" – when the rehabilitation unit is not part of a hospital.

Turning to the NHA's definition of a nursing home, we note the term "any institution" is untethered to a facility's licensure. Because a specifically designated "nursing home license" is not required under the HCFPA and its related regulations, the omission is not surprising. Nonetheless, we are not persuaded by plaintiffs' argument that the reference in N.J.A.C. 8:39-1.1, i.e., "long-term care facilities, commonly known as nursing homes," is dispositive of the issue. Enacted in 1976 and amended thereafter, the NHA does not reference the statutory and regulatory scheme encompassing long-term care facilities.[3]

In this case, the more vexing issue concerns the nature of CareOne's facility. Although the physical structure of CareOne is unclear from the record

---

[3] To the extent plaintiffs rely on the recently revised MJC 5.77, their argument is misplaced. Plaintiffs cite the "Note To Judge" portion of the charge, which states – without citation to any authority other than the NHA's definition of a nursing home – that the NHA "applies to any facility licensed as a long-term care facility, whether the resident is in for long-term care or sub[]acute rehabilitation." As the motion judge correctly decided, "Model Jury Charges are neither sanctioned nor approved by the Supreme Court before their publication." Nor has the Court addressed the definition.

provided on appeal, during oral argument before us, plaintiffs' counsel asserted the facility is a single structure with 144 beds; defense counsel did not dispute that characterization. However, it is unclear from the record whether that information was presented to the motion judge and, as such, it is inappropriate for consideration on appeal. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014). Regardless, we are not convinced the facility's physical structure is dispositive of the NHA's definition of a nursing home.

We consider, instead, the evidential materials presented to the motion judge in view of the plain terms of the statute. For example, Eagin's August 11, 2018 "Admission Record" contains a field for "Resident Information." Under the NHA: "'Resident' means any individual receiving extended medical or nursing treatment or care at a nursing home." Although not dispositive, it is unclear from the evidence provided on appeal where within the facility Eagin "resided" or "stayed" during either of his admissions to CareOne's facility.

To support its position, CareOne cites the deposition of Eagin's son, who testified he did not know whether his father had been admitted to CareOne for short-term or long-term rehabilitation but the intent "was to get him back on his feet and get him home." Specifically, Eagin "was there to get rehab and speech therapy and medical care if he needed it." He was not able to "move any

16

furniture in." Eagin's son also acknowledged his father had been admitted to "rehab facilit[ies]," including CareOne, after his leg was amputated. This lay testimony tends to support CareOne's argument that Eagin was not admitted as a nursing home resident.

Moreover, there is no documentary evidence in the record conclusively establishing the precise nature of CareOne's facility or the purpose of Eagin's admissions at CareOne. For example, there is no evidence of: "a written notice of the rights, obligations[,] and prohibitions set forth in [the NHA]," N.J.S.A. 30:13-7; the "minimum staffing requirements for nursing homes," N.J.S.A. 30:13-18; or an admission agreement between Eagin and CareOne, see N.J.S.A. 30:13-8.1, documenting the anticipated services. Further, under its long-term care facility license CareOne was authorized to operate a nursing home but the record is devoid of any evidence indicating the DOH issued a certificate of need authorizing the establishment of a nursing home. Taken together, the absence of these documents tends to suggest the facility was not operating as a nursing home.

But if CareOne – licensed only as a "Long Term Care Facility" – was not operating as a nursing home, what was its function? Contending Eagin's treatment at the facility controls the definition, CareOne argues decedent

received "short-term subacute rehabilitation not long-term care," i.e., not long-term "care on a continuous basis" under the NHA.

We recognize the NHA was enacted to protect our state's most vulnerable elderly individuals, most of whose care is not managed with the same intensity as a subacute rehabilitation unit, but the parties seemingly dispute Eagin's level of care. CareOne claims "several physicians and specialists were closely involved in . . . Eagin's care, and plaintiffs presented no contrary evidence with respect to . . . Eagin or any other patient." However, when deposed, Eagin's son testified he visited his father nearly "every day." Nurses would enter his room "every so often" but he "saw a doctor probably twice."

As CareOne acknowledges, however, there is no license in this state for a subacute rehabilitation unit – when that unit is not hospital-based. See N.J.S.A. 26:2H-7.5 (defining a "subacute care unit" as "a unit located within a hospital[,] which utilizes licensed long-term care beds to provide subacute care for patients"). In its answering brief, CareOne maintains "subacute rehabilitation units that are not hospital[-]based are licensed as long-term care facilities."

Based on the lack of proof in the record establishing CareOne was operating as a nursing home, the motion judge granted defendant's motion. However, it is unclear from the record whether under its long-term care facility

license, CareOne operated its entire facility as "short-term subacute rehabilitation units" or whether those units were part of another entity, which may or may not have been a nursing home. The parties dispute this point and the evidence in the record does not resolve it.

In <u>Burns</u>, which involved another CareOne facility, we stated the "facility [wa]s governed by the license issued to it as an assisted living residence." 468 N.J. Super. at 322. In the present matter, CareOne attempts to distinguish our decision in <u>Burns</u> because, unlike the pertinent section of the assisted living statute, N.J.S.A. 26:2H-128 – which specifically refers to the licensure of assisted living facilities – "the NHA does not include the type of license as an element of the definition of a 'nursing home.'" But the license in the present matter was issued for long-term not short-term care.[4]

Moreover, the parties not only dispute whether the term "any institution" applies to the "institution as a whole" or the unit to which Eagin was admitted, but also whether the institution as a whole or its "subacute rehabilitation units"

---

[4] To be clear, we form no opinion as to whether CareOne was properly or improperly operating its facility. As we observed in <u>Burns</u>: "Whether during decedent's stay there, CareOne was operating something other than" what it was permitted to operate under its license, "should be determined only by the [DOH], which possesses special expertise in these matters, not by the trial judge or a jury." 468 N.J. Super. at 378 (citing <u>Daaleman v. Elizabethtown Gas Co.</u>, 77 N.J. 267, 269 n.1 (1978)).

A-0426-23

fall under the remainder of the definition. Those terms include: whether the institution "maintains and operates facilities for extended medical and nursing treatment or care for two or more nonrelated individuals with acute or chronic illness or injury"; and whether those individuals "[we]re in need of such treatment or care on a continuing basis." N.J.S.A. 30:13-2(c). In our view, resolution of these issues turns on whether, and to what extent, Eagin was admitted as a resident of a "nursing home" or other "similar facilit[y]," see Bermudez, 439 N.J. Super. at 55. For example, was Eagin considered a resident – as reflected on his August 11, 2018 admission form – with the ability to utilize all facilities of the institution?[5] Put another way, was Eagin treated in a unit that was separate and apart from the facility as a whole?

We recognize plaintiffs do not argue additional fact discovery is necessary to resolve the issues presented on this appeal. However, on this record, we are unable to conclude whether CareOne's facility – as a whole and where Eagin was treated – falls within the definition of the NHA. Viewing the evidential materials in the record in favor of plaintiffs as the nonmoving party, we cannot resolve the disputed issues on this record. See Brill, 142 N.J. at 540. Accordingly, we vacate the order to the extent it dismissed all claims relating to

_____

[5] Eagin's November 9, 2018 admission form is not contained in the record.

the NHA in counts one through three, and remand for the motion judge to reopen fact discovery, limited to the issues raised on this appeal concerning NHA's definition. We leave the timeframe to conclude discovery to the judge's sound discretion.

C.

Lastly, we briefly address plaintiffs' argument that the motion judge erroneously dismissed their punitive damages claim under count four. Because plaintiffs neither moved for reconsideration of the June 30, 2023 order dismissing their punitive damages claim, nor timely moved for leave to appeal from that order, we need not address their contentions.

We have nonetheless considered plaintiffs' claims under the PDA – as pled in their complaint – and conclude they lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). We affirm for the reasons stated in the motion judge's statement of reasons that accompanied the June 30, 2023 order.

Affirmed in part, vacated and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0426-23